## W. H. Williams v. The State.

1. Continuance.— Under our present Code the granting or refusal of an application for a continuance, whether the first or a subsequent one, based upon the absence of witnesses, is confided to the discretion of the trial court, and is no longer a matter of right. If, however, after trial and conviction, it appears that the evidence upon which the refused application was based was material, and probably true, a new trial should be granted. See this case for the distinctions between the old and new Codes on this subject.

2. Dying Declarations — Case Stated.— In a prosecution for murder, a witness stated that he approached the deceased immediately after the fatal shot was given, and asked him "what is the matter with you?" to which he replied "Jack Williams shot me." It was also in proof that the defendant was commonly known by the nickname "Jack Williams." After the witness had left the stand the defense moved the court to withdraw this evidence from the jury, upon the ground that it was not alleged that Jack and W. H. Williams, the defendant, were one and the same person. *Held*, that even if the objection had been interposed at the proper time, it would not have been tenable, as the answer to the question was so clearly interwoven with the transaction, being given after the deceased had sunk down in his death agony, and immediately preceding his death, that it was admissible as part of the *res gestæ;* and *held*, further, that the evidence showing that Jack and W. H. Williams were names commonly applied to the defendant, it was not necessary that the indictment should allege them to be one, to let in the proof, and therefore there is no variance between the *allegata* and *probata.*

3. New Trial.— Absence of counsel is no cause for new trial. See the opinion for peculiarity of a motion based on this ground.

4. Practice.— Objections to the service of the special *venire* must be taken at the proper time in the court below, and, to authorize an inspection by this court, the facts must be presented by proper bill of exception.

5. Charge of the Court — Manslaughter.— See the opinion *in extenso.* for a charge upon manslaughter requested by the defendant, but properly refused because the charge was not warranted by the evidence.

Appeal from the District Court of Tom Green. Tried below before the Hon. A. O. Cooley.

The indictment charged the appellant with the murder of John Anderson, in Tom Green county, Texas, on the 4th day of December, 1880. His trial resulted in his conviction of murder in the first degree, and the death penalty was assessed. The evidence was brief and is embodied in the opinion substantially as given by the witnesses.

No brief for the appellant. *H. L. Bentley* and *Walton, Green & Hill* appeared in his behalf in a motion for rehearing, which was overruled.

*H. Chilton,* Assistant Attorney General, for the State.

WINKLER, J. In the District Court of Tom Green county, on April 22, 1881, the appellant was convicted of the crime of murder in the first degree, and the penalty of death was assessed by the jury impaneled for his trial on an indictment which charges the appellant with the murder of one John Anderson in Tom Green county, on December 4, 1880. The indictment was presented by the grand jury and filed on April 19, 1881. On April 22, 1881, the defendant below filed a sworn application for a continuance, in which it is stated that he could not safely go to trial at that term of the court, for the want of certain witnesses, named in the application, the materiality of whose testimony is set out in the application for continuance substantially as follows: "Defendant expects to prove, by Charles King, that before the alleged killing of John Anderson, deceased, he, witness, took charge of the defendant and brought him from the town of San Angelo to Fort Concho, while the defendant was in a state of intoxication. By John Cisco, that he, witness, was present at the time of the alleged killing, and that the defendant was not present at the killing. By Corporal Jackson, that he, witness, found the defendant in bed after the

time of the alleged killing of the deceased.  By Scott
Ford, that he, witness, was present at the time of the
alleged killing of the deceased, and that the defendant
was not present at the alleged killing.  The application
for a continuance was overruled by the court, and the
defendant's counsel reserved exceptions.

The main features of the homicide, as gathered from
the evidence of witnesses who testified at the trial, may
be briefly stated as follows:  On the night of the killing
the deceased had been engaged in " dealing monte" under
a shed in the rear of the barracks of Company D, 10th
Cavalry, U. S. Army, at Fort Concho, Tom Green county.
The shed, it seems, is situated between the main quarters
and the mess-room of the company.   At a little distance
from Anderson's situation and under the same shed was
another game of monte, at which one Mason was dealing.
The defendant and others were betting at Anderson's
table.   The two games of the deceased and of Mason had
been in progress "all the evening."   One witness testified
that a little while before the killing, he, the witness, went
to his stables and locked the door and then returned to
the place where the games were going on.   He says: " I
passed in at the west end of the large building in front of
the mess-room and shed aforesaid, and walked through it
till I got to the north door, just in front of where
deceased, Anderson, was dealing monte, when I left.   As
I got to the door with my foot on the door-sill, I saw the
deceased, Anderson, standing up before his table, between
the table and the wall of the mess-room; he had put away
his money and was in the act of putting away his cards.
The defendant was standing in front of Anderson, and
close to him, not farther than two or three feet.   I heard
the defendant say to Anderson, ' ain't you going to deal
any more ?'   Anderson replied, ' no, I am going over to
Angelo.'   Defendant then said, ' you have got two dol-
lars and a half of my money.'   Anderson replied, ' yes,

but I won it, and if you will come over to town I'll give you
a chance to win it back.   I am going to deal over there.'
The defendant said, ' you're not going by a damned
sight;' and as he said that he stepped back a step and
drew his pistol, an army six-shooter, and shot the de-
ceased Anderson.   When he shot the first shot, Anderson
was standing up, but at the fire he fell back on his chair
just behind him, and his head fell back, and his arms fell
down by his side, and I could see the blood coming out of
his breast.   The defendant then said, ' take that,' and
shot the deceased twice more.   Whether he hit him or not,
the second and third fires, I don't know.   I remained
standing in the door-way until the defendant passed by
me with his pistol in his hand, going into the main
quarters."

Another witness says he was standing near the monte
table of Mason under the shed when the deceased was
killed.   When the first shot was fired, this witness says
he ran around to the north end of the mess-room, and
while there heard two more shots fired in quick succes-
sion, and he went around under the shed again and saw
the deceased gasping between his table and chair, and
took hold of him and asked him what was the matter.
The deceased said, "Jack Williams shot me."   This wit-
ness testified that the defendant is known by the nick-
name of Jack Williams and commonly called Jack
Williams, and he fixes the date of the occurrence as on the
night of December 4, 1880, between seven o'clock and half-
past eight o'clock, and the place at Fort Concho in Tom
Green county, Texas.   This witness testified further that
the deceased had no arms upon his person, that he
examined him, and that he lived but a few seconds after
the witness took hold of him, and that deceased tried to
say something more but could not.   Witness says he laid
him down, opened his clothes and saw a wound in the
breast.

A medical witness testified that he knew the deceased and examined him on or about December 4, 1880; that he came to his death from the effects of a pistol shot in his breast, and is now dead. The foregoing is substantially the testimony for the prosecution; none was offered by the defendant. The witnesses for the State testify positively and clearly as to the facts about which they speak, and no question is presented as to their entire credibility.

Thus much as to the testimony adduced on the trial as well as the materiality of the testimony of the witnesses on account of whose absence a continuance was sought, in order to ascertain and be understood in passing upon the action of the court below in overruling the application for a continuance in the first instance, and secondly, in refusing a new trial, on account of the alleged absent testimony, under the provisions of subdivision 6 of article 560, Code Criminal Procedure, wherein it is among other things declared that the truth of a first or any subsequent application (for a continuance), as well as the merit of the ground set forth therein, and its sufficiency, shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right; *provided* that, should an application for a continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the application was of a material character, and that the facts set forth in said application were probably true, a new trial should be granted. In order to avoid confusion in the application of this statute, it must be borne in mind that it is of recent enactment, and is not to be confounded with previous enactments and decisions thereunder, in which the courts under those former statutes uniformly held that where a first application for a continuance by a defendant in a criminal prosecution met all the requirements of the statute, the courts had no discretion in the matter, and a

continuance in such a case was granted as a matter of right.   Instances of this character under former laws may be found in *Dinkins* v. *State*, 42 Texas, 250, *Shackelford* v. *State*, 43 Texas, 138, and *Peeler* v. *State*, 2 Texas Ct. App. 455, and cases there cited.   These cases, however, afford no rule applicable to the present statute, which is of more recent date than any of these decisions.

To our minds, the Legislature intended to change the law and avoid the interpretation given to it, by enacting the provision clearly embodied in the article quoted, to the effect that, " the truth of a first or any subsequent application, as well as the merit of the ground set forth therein, and its sufficiency, shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right."   By the *proviso* appended, it was the evident intention of the lawmakers that whilst an application for a continuance was confided to the sound discretion of the court who was called to pass upon the application, it was not designed that the party should be remediless.   On the contrary, if it should appear upon the trial that the evidence of the witness or witnesses named in the application for a continuance was of *a material character,* and that the facts set forth in the application were *probably true,* then the law requires that the party shall have his remedy by requiring of the court that a *new trial* shall be granted. Hence, whilst in the first instance the granting or refusing a continuance is confided to the sound discretion of the trial court, it would seem that after the trial has been concluded, and the testimony has been developed, if it shall then appear to the trial court that the evidence of the witness or witnesses named in the application for a continuance was, 1, of a material character, and 2, that the facts stated in the application were probably true, in such a case the law demands that a new trial be granted.

In determining this question as to whether a new trial

should be granted, the trial court in the first place, and this court on appeal should look to all the testimony, as well that given on the trial as that set out in the application for a continuance, in order to determine whether the facts set forth in the application were, first, of a material character, and, secondly, were probably true, and as this inquiry shall result, the one way or the other, the new trial should be granted or withheld.

Applying these conclusions to the present inquiry, the court below having refused to grant a continuance when first applied for, and having also refused to grant the defendant a new trial after his conviction, the inquiries to be made by this court are, first, whether the court below abused the discretion confided to it by the law in overruling the defendant's application when first presented, and secondly, whether the facts set forth in the application, that is, the testimony it was expected to obtain from the absent witnesses, was material in its character, and also whether the alleged facts were probably true.

With reference to the first inquiry we are unable to say that from anything contained in the record and upon which an opinion can be based, the court abused its discretion. The diligence, aside from verbal criticism and in view of the fact that the defendant made his application for a continuance within three days after the indictment was found, would seem to have been sufficient in ordinary cases. Still we are of opinion that the facts stated were not material, as required to be stated in a first application by a defendant, in art. 560, clause 3, Code Crim. Procedure.

As to whether a new trial should have been granted or not, on the ground of overruling the application for a continuance, we are of opinion the court did not err. If the testimony expected to be obtained from the absent witnesses, as set out above, be considered in connection with the testimony adduced on the trial, we are led to the

conclusion not only that the testimony was not of a material character, but that it is very questionable, to say the least, whether it was not probably untrue; and this being the case we cannot say that there was any legal obligation resting upon the court below to grant a new trial, or that there is anything presented in connection with the subject which would warrant this court in reversing its rulings in the premises.

In a second bill of exceptions it is recited that, after a State's witness had testified that the deceased was asked what was the matter with him, and answered "Jack Williams shot me," the question and answer were just before the death of the deceased, and that the witness also stated that Jack Williams was a nick-name by which W. H. Williams, the defendant, was commonly known and called. The bill recites that after the witness had left the stand defendant moved the court to instruct the jury not to regard the statements as to Jack Williams, it not being alleged in the indictment that Jack Williams and W. H. Williams, the defendant, are one and the same person. The motion was heard and overruled, and the ruling was reserved.

In this we see no error. If objection had been made to this testimony at the proper time, that is, when it was offered, the objection ought to have been overruled. The response made by the dying man to the question of the witness "what is the matter with you?" to wit, "Jack Williams shot me," was admissible as *res gestæ*. From the testimony in this connection it is apparent beyond cavil, that at the time the question was asked and the answer given, the death wound had been inflicted, and the deceased had sunk down in a dying condition, and could not speak further, though desiring to do so, and that an interval of but a very few minutes of time, at most, could have elapsed from the firing of the first shot until the deceased was a dead man. If the answer of the de-

ceased was not *res gestæ* under the circumstances, then we are of opinion there can be no such thing. The evidence was so interwoven with the transaction as to be inseparable from it, and necessarily formed a part of it as seen, heard and related by the witness, and was in our opinion clearly admissible. Wharton's Crim. Ev. § 276; *Boothe* v. *State*, 4 Texas Ct. App. 202; *Warren* v. *State*, 4 Texas Ct. App. 619, and authorities there cited. The remainder of the testimony of the witness, to the effect that the defendant was called and known by the nickname of Jack Williams, is equally unobjectionable. It was unnecessary that the indictment should have contained the averment in order to let in the proof. The important fact to be ascertained was this, Was the person named in the indictment the identical person who perpetrated the deed? In this respect there is no room for controversy; the defendant was identified in court by the testimony as the person who fired the shot by which the deceased was deprived of life. If the defendant had been indicted by one name, and the proof had shown that he was known by that name and also by another, there would have been no fatal variance between the *allegata* and the *probata*. *Cotton* v. *State*, 4 Texas, 260; *Owen* v. *State*, 7 Texas Ct. App. 329. The court did not err in refusing to instruct the jury as requested by the defendant's counsel in regard to this testimony.

Other grounds besides the overruling of the defendant's motion for a continuance are presented in his motion for a new trial. Among the grounds stated is an affidavit of the attorney appointed by the court to represent the defendant on the trial of his case, to the effect that prior to his appointment he had been employed to represent another person before another court, and was compelled, because of his prior engagement, to leave this case and the court in which it was tried; that he knew of the preparation which had been made for the defendant's trial,

and relied implicitly on his being able to procure a continuance, and was confident that it would be granted; and, relying upon this, before leaving, he procured the services of two other attorneys to apply for the continuance, but, believing a continuance would not be denied, the other attorneys were not minutely advised as to the merits of the defense. If the attorneys procured to represent the defendant did not represent him, not only on the hearing of the application, but throughout the trial (the name of one of them appears to the assignment of errors), then the record does not disclose the fact; or if there is any question as to their competency to represent the defendant throughout the trial, such fact is not apparent. If counsel appointed to represent the defendant, or substituted for that purpose, had not had opportunity to converse with the defendant, correct practice would have required the court, on the fact being made known to it and request made, to have granted a reasonable time, consistent with the business before the court and the length of time at its disposal. Nothing of the kind is shown to have been done, and, in the absence of anything appearing to the contrary, it is but reasonable to presume that the counsel not only represented the defendant throughout the trial, but that they were competent to do so as effectively as the one at first appointed by the court. At any rate it does not appear that the defendant was tried without counsel. *Boothe* v. *State*, 4 Texas Ct. App. 202.

Objection is made to the service of the special *venire*, and it is stated in the assignment of errors that it is not shown by the record that service had been made on the defendant one entire day before the trial commenced. If there was any error in those matters, it should have been taken advantage of at the time, and if there was any ruling desired to be presented in this court on the hearing of the appeal, the matter should have been presented

by proper bill of exceptions.  This not having been done, we find no ruling of the court below so presented by the record that it can properly be inquired into here.  The same may be said as to the charge of the court being partly printed, in the absence of any fundamental error being apparent.  The jury were instructed in a manner not calculated to mislead on murder of the first and of the second degrees, with an explanation of express and implied malice, and were given appropriate instructions as to the verdict in case the jury should find the defendant guilty of either degree of murder, and were given in charge the legal presumption of innocence, and the reasonable doubt as between the two degrees of murder, and as to the whole case, and were advised in the conclusion of the charge that if they had a reasonable doubt of the defendant's guilt they would acquit him.  The court did not charge on any other grade of the offense than the two degrees of murder.  The defendant's counsel asked a charge on reasonable doubt which the court had already given in plain terms, and also requested the following charge on manslaughter which, like the first, the court refused:  "If you believe from the evidence that at the time of the killing the defendant was in an excited condition of mind, owing to the fact that the deceased had defendant's money and refused to return it to defendant, and that defendant became suddenly angry at the deceased, and, under the sudden passion or anger, inflicted the fatal wound upon the deceased, you will find him guilty of manslaughter."

The testimony, as we find it in the record and substantially as set out above, did not call for a charge on manslaughter.  There was no adequate cause shown for such anger as would reduce a voluntary malicious killing from murder to manslaughter, and the court did not err in refusing to give the desired instruction to the jury.

It is always a source of regret with this court to have

to pass finally upon a capital felony when no counsel appears to represent the appellant, as is the case at present. We have, however, given to the case as presented by the record before us that attentive investigation and careful consideration its importance demands, and are constrained to say that for aught that appears the appellant has had a fair and impartial trial, conducted in substantial compliance and with due regard to the demands of the law, and in which all the rights the law guarantees him have been accorded him. The indictment is sufficient to support the judgment, and the testimony is amply sufficient to support the finding of the jury and the judgment of the court below. This being the case, it only remains for us to affirm the judgment of the District Court, and it is accordingly so ordered.

*Affirmed.*